UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
TASHA O. LICORISH-DAVIS and TYREEK DAVIS,

      Plaintiffs,

 - against -             **OPINION AND ORDER**
                   12-CV-601 (ER)

DR. MILLICENT MITCHELL; SOCIAL WORKER
KATEY WALSH; SUSAN MURRAY, HEAD OF
SOCIAL WORK; and BLYTHEDALE CHILDREN'S
HOSPITAL,

      Defendants.
-----------------------------------------------------------------------x

Ramos, D.J.:

  Plaintiffs Tasha O. Licorish-Davis and Tyreek Davis (collectively, "Plaintiffs"), appearing *pro se*, bring this civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Blythedale Children's Hospital ("Blythedale"), and various Blythedale employees (collectively, "Defendants"), alleging violations of the First, Fourth, Ninth and Fourteenth Amendments, as well as violations of 18 U.S.C. §§ 241 and 242. Complaint ("Compl.") Doc. 3. Pending before the Court is Defendants' motion to dismiss the Complaint. Doc. 31. For the reasons set forth below, Defendants' motion to dismiss is GRANTED.

**I. Factual Background**

  The Court accepts Plaintiffs' factual allegations as true for purposes of Defendants' motion to dismiss.[1]

  Plaintiffs' daughter, Aaliyah Davis ("Aaliyah"), was born on April 2, 2011 in Richmond, Virginia. Compl. at 5. On June 9, 2011, while visiting New York and staying at the apartment

---

[1] In support of their motion to dismiss, Defendants submitted the affidavit of Defendant Susan Murray and the declaration of Marianne Monroy, Esq. On a motion to dismiss for failure to state a claim upon which relief can be granted, district courts generally do not have the authority to consider matters outside the pleadings. *Trautz v. Weisman*, 809 F. Supp. 239, 242-43 (S.D.N.Y. 1992) (citing *LaBounty v. Adler*, 933 F.2d 121, 123 (2d Cir. 1991)). Accordingly, the Court does not consider the allegations contained within the Murray affidavit or Monroy declaration on Defendants' motion.

of Ms. Licorish-Davis's mother in Brooklyn, Aaliyah was burned in a "scald accident" while being bathed. *Id.* Plaintiffs allege that the apartment where the accident occurred was under construction at the time and "was in terrible condition." *Id.* Plaintiff Licorish-Davis rushed Aaliyah to New York Methodist Hospital ("Methodist Hospital"). *Id.* That same day, Aaliyah was transferred to the New York Presbyterian Weill Cornell Medical College ("Weill Cornell") burn center, where she stayed until her transfer to Blythedale on August 5, 2011. *Id.* Upon her admission to Methodist Hospital immediately following the accident, the hospital contacted the New York City Administration for Children's Services ("ACS"). *Id.* Plaintiffs allege that Methodist Hospital called ACS at the direction of Weill Cornell, despite the fact that Dr. Laudenbauch, who oversaw Aaliyah's care while at Methodist Hospital, stated that Aaliyah's injuries were the result of an accident. *Id.* Aaliyah was subsequently ordered into the custody of ACS, pursuant to a June 13, 2011 Removal Order issued by the Honorable Amanda White of the New York State Family Court, Kings County ("Family Court"). *See* Affidavit of Susan Murray ("Murray Aff.") Ex. 2.[2]

Plaintiffs allege that Aaliyah was transferred from Weill Cornell to Blythedale on or about August 5, 2011 for rehabilitation, notwithstanding the fact that Plaintiffs requested that she not be sent there because it was too far from their home and would be costly to travel to. Compl. at 5. Plaintiffs have been visiting Aaliyah in the hospital since she was first hospitalized and

---

[2] In deciding a motion to dismiss pursuant to Rule 12(b)(6), a district court may "take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case *sub judice*." *Ferrari v. Cnty. of Suffolk*, 790 F. Supp. 2d 34, 38 n.4 (E.D.N.Y. 2011) (citations omitted). Moreover, in addition to documents attached to the complaint or incorporated in the complaint by reference, courts may consider documents submitted by defendants on a 12(b)(6) motion where: (1) plaintiffs have undisputed notice of the contents of such documents, and (2) such documents are integral to the plaintiffs' claims. *R.H. Damon & Co., Inc. v. Softkey Software Prods., Inc.*, 811 F. Supp. 986, 989 (S.D.N.Y. 1993) (citation omitted). Here, the Court may take judicial notice of the June 13, 2011 Removal Order, as it appears in the court records of the underlying Family Court matter, which clearly relates to the present action. Moreover, the Court finds that the Plaintiffs, as parties to the Family Court matter, have notice of the contents of the Removal Order and that such Order is integral to Plaintiffs' claims.

claim that on many occasions, they requested that Aaliyah be transferred to Virginia, where there is also a burn center and a pediatric rehabilitative hospital. *Id.* at 5-6. Sometime in August 2011, the night nurse supervisor informed Plaintiffs that Aaliyah was no longer in their custody, and was instead in the custody of the Commissioner for Children Services. *Id.* at 6.

Plaintiffs allege that they have requested on many occasions that they be permitted to get a second opinion from a burn specialist regarding Aaliyah's treatment and care and for the purpose of determining whether her burns were the result of an accident. *Id.* Plaintiffs further allege that a second opinion is necessary because of the negligent medical care Aaliyah has received. *Id.* Plaintiffs claim that Defendant Millicent Mitchell, M.D., told them that they could arrange an appointment for a second opinion that Blythedale would supervise. *Id.* Plaintiffs made an appointment at Staten Island University Hospital, but allege that they were met with great resistance by Defendants. *Id.* Specifically, Plaintiffs claim that Staten Island University Hospital has attempted on many occasions to contact Defendant Mitchell regarding Aaliyah's care, however, Blythedale has continuously refused to facilitate the second opinion, citing the fact that ACS is involved. *Id.* at 7. Plaintiffs allege in their opposition papers[3] that it is generally Blythedale's policy to allow patients or their parents to change facilities and/or to obtain second opinions from other doctors or hospitals. Pls.' Nov. 5, 2012 Mem. L. Opp. (Doc. 40) ("Pls.' 11/5/12 Mem. L. Opp.").

---

[3] As discussed *supra* n.1, courts generally may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss. However, the mandate "to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials." *Gadson v. Goord*, No. 96 Civ. 7544 (SS), 1997 WL 714878, at *1 n.2 (S.D.N.Y. Nov. 17, 1997) (citing, *inter alia*, *Gil v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987) (considering *pro se* plaintiff's affidavit in opposition to defendant's motion to dismiss)). Accordingly, where a *pro se* plaintiff is faced with a motion to dismiss, a court may consider materials outside the complaint "to the extent they are consistent with the allegations in the complaint." *Donhauser v. Goord*, 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004) (quotations and citation omitted). Moreover, although Plaintiffs filed three memoranda of law in opposition to Defendants' motion without the Court's permission, in light of their *pro se* status, the Court has considered all three of Plaintiffs' briefs.

Plaintiffs further allege that Defendants Katey Walsh, the social worker assigned to Aaliyah; Susan Murray, Director of Social Work; and Dr. Mitchell fabricated information in order to get Plaintiffs' visits with Aaliyah restricted. Compl. at 6. Plaintiffs claim that the staff at Blythedale told ACS that Plaintiffs planned to "kidnap" Aaliyah in order to get a second opinion from another hospital. *Id.* Plaintiffs attached to their Complaint as Exhibit D a portion of a September 28, 2011 affidavit by Defendant Murray.[4] The affidavit states:

> The parents have requested that Aaliyah be transferred to a different facility, and Blythedale sent referrals to Elizabeth Seton Pediatric Center, St. Mary's, and Rusk; yet, all facilities denied the referrals, as Aaliyah requires far more treatment than any of the facilities can provide. . . . [O]n one occasion, Ms. [Licorish-]Davis claimed that Aaliyah was scheduled for a second opinion at Staten Island University Hospital on September 27, 2011, yet provided no supporting documentation or information regarding such an appointment, and Aaliyah was not re-evaluated for a second opinion. In fact, due to [Blythedale's] concerns with the parents' behavior, and Mr. Davis' threats to remove Aaliyah from the hospital despite her current remand to ACS, we do not believe she should be removed from the hospital at any time in order to undergo a second opinion. Further, for these same reasons, we also believe that the parents' visitation with Aaliyah should be suspended for the period of time that she remains at Blythedale Children's Hospital.

Murray Aff. Ex. 3 ¶ 6.

As of the date of the filing of the Complaint, January 20, 2012, Aaliyah was still receiving treatment at Blythdale. Compl. at 6. Plaintiffs argue in their opposition papers, however, that Aaliyah "has been cleared for discharge many times since [October] 2011 . . . and is languishing in Defendant['s] hospital longer than medically necessary." Pls.' 11/5/12 Mem. L.

---

[4] Defendants included a complete copy of Defendant Murray's affidavit in their submission in support of their motion to dismiss. *See* Murray Aff. Ex. 3. As a portion of the document was included as an exhibit to the Complaint, the Court may consider the complete copy of the Murray affidavit that is attached as an exhibit to Defendants' papers. *See In re Operations NY LLC*, Bankr. No. 10-13446 (SMB), 2013 WL 1187879, at *3 (Bankr. S.D.N.Y. Mar. 21, 2013) ("Where the complaint cites or quotes from excerpts of a document, the court may consider other parts of the same document submitted by the parties on a motion to dismiss.") (citing *131 Main St. Assocs. v. Manko*, 897 F. Supp. 1507, 1532 n.23 (S.D.N.Y. 1995)).

Opp. 1.  Pursuant to a March 22, 2012 Order issued by the Honorable Ilana Gruebel of the Family Court, on consent of all parties and counsel, Plaintiff Licorish-Davis was granted supervised visitation rights subject to the visiting hours of Blythedale and any medical needs of Aaliyah.  Murray Aff. Ex. 4.  Additionally, the Order provided that when Aaliyah is released from Blythedale to a foster home, a court conference will be scheduled to consider a schedule for visitation by Plaintiff Licorish-Davis.  *Id.*  According to a February 5, 2013 letter from Plaintiff Tyreek Davis to the Court, on November 8, 2012, Aaliyah received a second opinion from Dr. Michael Cooper at the Staten Island University Burn Center, who deemed her injuries the result of an accident.  *See* Pls.' Feb. 5, 2013 letter (Doc. 48.)

Plaintiffs claim that Defendants use ACS as a "scare tactic" to violate the inalienable rights they have as parents, and that the basis of their action is the violation of Aaliyah's and Plaintiffs' constitutional right to obtain a second opinion regarding Aaliyah's injuries, to change doctors, and to have her transferred back to Virginia, her home state.  Compl. at 7.  Although Plaintiffs allege that they have parental rights and are currently fighting in court over this matter, they do not specify the nature or current status of those court proceedings.  *Id.*  Moreover, Plaintiffs do not state in the Complaint whether Aaliyah continues to be in the custody of ACS, however, Plaintiffs' February 5, 2013 letter to the Court indicates that Aaliyah continued to be in the custody of ACS and was in foster care at least as of the date of the letter.  *See* Pls.' Feb. 5, 2013 letter.

## II. Legal Standard on Motion to Dismiss

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), district courts are required to accept as true all factual allegations in the complaint and to draw all reasonable inferences in the plaintiff's favor.  *Famous Horse Inc. v. 5th Ave. Photo Inc.,* 624 F.3d 106, 108 (2d Cir.

2010). However, this requirement does not apply to legal conclusions, bare assertions or conclusory allegations. *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 681 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In order to satisfy the pleading standard set forth in Rule 8 of the Federal Rules of Civil Procedure, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Id.* at 678 (citing *Twombly*, 550 U.S. at 570). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Accordingly, a plaintiff is required to support its claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully." *Id*. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 557).

In the case of a *pro se* plaintiff, the Court is obligated to construe the complaint liberally, *Hill v. Curcione,* 657 F.3d 116, 122 (2d Cir. 2011), and to interpret the claims as raising the strongest arguments that they suggest. *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir. 2006). The obligation to read a *pro se* litigant's pleadings leniently "applies with particular force when the plaintiff's civil rights are at issue." *Jackson v. NYS Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). "However, even *pro se* plaintiffs asserting civil right claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

### III. Plaintiffs' Section 1983 Claims

Defendants assert, and Plaintiffs do not appear to contest, that Blythedale is a private not-for-profit hospital facility, and that each of the individually-named Defendants are employees of

Blythedale, and not of the government or any state entity. Defs.' Mem. L. 12; Pls.' 11/5/12 Mem. L. Opp. 2. In support of their motion to dismiss, Defendants argue that they did not engage in conduct under the "color of state law," and that Plaintiffs' § 1983 claims fail on that basis alone. Defs.' Mem. L. 12-17. Plaintiffs argue, on the other hand, that Defendants behaved as state actors and may be held accountable under § 1983 because they held Aaliyah at the direction of ACS after she had been medically cleared for discharge in or around October 2011. Pls.' 11/5/12 Mem. L. Opp. 3.

"Section 1983 imposes liability on anyone who, under color of state law, deprives a person 'of any rights, privileges, or immunities secured by the Constitution and laws.'" *K & A Radiologic Tech. Servs., Inc. v. Comm'r of Dep't of Health of NY*, 189 F.3d 273, 280 (2d Cir. 1999) (quoting *Blessing v. Freestone*, 520 U.S. 329, 340 (1997)). Because the "core purpose of § 1983 is 'to provide compensatory relief to those deprived of their federal rights by state actors,'" *Hardy v. NYC Health & Hosps. Corp.*, 164 F.3d 789, 795 (2d Cir. 1999) (citation omitted), the first inquiry in a § 1983 case is therefore "whether the actions alleged by the plaintiffs come within the definition of 'under color of' [state] law." *Carlos v. Santos*, 123 F.3d 61, 65 (2d Cir. 1997).

A. **Plaintiffs Have Sufficiently Pled State Action on the Part of Defendants**

The Second Circuit squarely addressed the issue of whether a private hospital engages in state action when it detains a child who is believed to have been abused in *Kia P. v. McIntyre*, 235 F.3d 749 (2d Cir. 2000). The court in *Kia P.* held that when a private hospital admits a child for medical reasons, the hospital is not a "state actor" subject to liability under § 1983, even if concerns of abuse partially inform the decision. *Id.* at 756-57. Once a child has been medically cleared, however, if the hospital continues to hold the child for purely investigatory reasons or at

7

the direction of the state, it becomes a part of the "reporting and enforcement machinery" of the state and is subject to § 1983 liability. *Id.*

In *Kia P.*, the defendant hospital continued to hold a child after she had been medically cleared until it received approval to discharge the child from the New York City Child Welfare Administration ("CWA"). The Second Circuit held that to the extent that the hospital was acting "as part of the reporting and enforcement machinery for CWA, a government agency charged with detection and prevention of child abuse and neglect-the hospital *was* a state actor." *Id.* at 756 (emphasis in original). The court went on to find, however, that "the refusal of the Hospital to release [the child] to her mother for reasons relating to child abuse and child welfare laws did not become effective until the medical release was issued and [the child] was no longer being held by the Hospital's doctors for treatment and observation." *Id.* at 757. Thus, until the child was medically cleared for discharge, "the Hospital's actions . . . did not subject it to liability under § 1983." *Id.*

Here, the parties do not dispute that Aaliyah received medical treatment from Blythedale upon her admission to the hospital and for a period of time thereafter. Plaintiffs contend, however, that she was cleared for discharge "many times" since October 2011 and that Defendants held her "longer than medically necessary." Pls.' 11/5/12 Mem. L. Opp. 1. Defendants, on the other hand, argue that Plaintiffs' allegation that Aaliyah was ready to be discharged in October 2011 is "patently baseless, as there was no suitable placement for her authorized by ACS." Defs.' Reply Mem. L. 2. Accepting Plaintiffs' allegations as true and drawing all reasonable inferences in their favor, as the Court is required to do, the Court finds that Plaintiffs have adequately pled state action on the part of Defendants. Although discovery could ultimately reveal that Aaliyah continued to receive medical treatment until the date of her

discharge from Blythedale, thereby arguably necessitating a finding that the hospital did not engage in state action pursuant to the Second Circuit's holding in *Kia P.*, in light of Plaintiffs' allegation that she was medically cleared for discharge as early as October 2011, the Court cannot find that Plaintiffs have failed to allege state action at this phase in the litigation.

Although Defendants argue that Blythedale continues to provide Aaliyah with intensive medical treatment and rehabilitation therapy, Defs.' Mem. L. 17, they point to no evidence to support that contention other than the affidavit of Defendant Murray, which the Court may not consider on a motion to dismiss. Moreover, the Court notes that Defendants' contention that they were unable to discharge Aaliyah a year earlier "because there was no place for Aaliyah to be discharged to" until "ACS secur[ed] a suitable foster home for [her]," Reply Murray Aff. ¶ 7, suggests that Defendants held Aaliyah at the direction of and in consultation with ACS, rather than as a result of her continuing medical needs. Additionally, Defendants repeatedly argue that they "could not legally transfer Aaliyah to another facility or transport her off-premises for a second opinion . . . absent approval from, and coordination through, ACS," Defs.' Reply Mem. L. 3, however, that alone is insufficient to shield them from liability under §1983. Indeed, the Second Circuit held that the hospital in *Kia P.* was a "state actor" for §1983 purposes where it refused to discharge the child to her parents in compliance with "CWA policies requiring that any child under investigation by CWA not be released from the Hospital without CWA permission." *Kia P.*, 235 F.3d at 752-53. Accordingly, and in conformance with the allegations in the Complaint, the Court finds that Defendants became "state actors" for §1983 purposes in or about October 2011 when they continued to hold Aaliyah notwithstanding that she was medically cleared for discharge.

B. <u>**Plaintiffs Fail to State a Section 1983 Claim**</u>

Plaintiffs allege that Defendants violated their First, Fourth, Ninth, and Fourteenth Amendment rights in refusing to permit them to obtain a second opinion regarding Aaliyah's injuries, to change doctors, and/or to have Aaliyah transferred to her home state, Virginia.

1. <u>**First Amendment**</u>

Plaintiffs do not outline the basis for their First Amendment claim in the Complaint, however, they assert in their opposition papers that Defendants violated their First Amendment right to be free from governmental intrusion in the making of medical decisions on behalf of their children.  Pls.' 11/5/12 Mem. L. Opp. 3.  Although not specifically alleged, the Court reads Plaintiffs' papers as raising a claim pursuant to the right to intimate association, which "guarantees an individual the choice of entering an intimate relationship free from undue intrusion by the state." *Sanitation & Recycling Indus., Inc. v. City of New York*, 107 F.3d 985, 996 (2d Cir. 1997) (citing *Roberts v. United States Jaycees*, 468 U.S. 609, 617-18 (1984)).  The Supreme Court has extended this right to relationships that "attend the creation and sustenance of a family-marriage, childbirth, the raising and education of children, and cohabitation with one's relatives," *id.* (quoting *Roberts*, 468 U.S. at 619), and has noted that "[t]he fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents." *Santosky v. Kramer*, 455 U.S. 745, 753 (1982).

Although the Court has stated that the right to intimate association receives protection as "a fundamental element of personal liberty" and is generally grounded in substantive due process under the Fourteenth Amendment, *Patel v. Searles*, 305 F.3d 130, 135 (2d Cir. 2002) (citing *Roberts*, 468 U.S. at 618-19), it has at times analyzed the right to intimate association as one

10

emanating from the First Amendment. *See Oglesby v. Eikszta*, No. 07 Civ. 00051 (NPM) (RFT), 2007 WL 1879723, at *10 (N.D.N.Y. June 28, 2007) (citing *Adler v. Pataki*, 185 F.3d 35, 42-43 (2d Cir. 1999) (citing *City of Dallas v. Stanglin*, 490 U.S. 19, 23-24 (1989)); *Lying v. Int'l Union, UAW*, 485 U.S. 360, 364-66 (1988)). However, courts within this Circuit specifically addressing the right to intimate association vis-à-vis parent-child relationships have analyzed the right under the principles of substantive due process rather than the First Amendment. *Id.* (citing *Anthony v. City of New York*, No. 00 Civ. 4688 (DLC), 2001 WL 741743, at *12 (S.D.N.Y. July 2, 2001); *Wilkinson v. Russell*, 182 F.3d 89, 104 (2d Cir. 1999)); *see also Garten v. Hochman*, No. 08 Civ. 9425 (WCC), 2009 WL 302267, at *6 (S.D.N.Y. Jan. 28, 2009) (holding that plaintiff's right of free association claim cannot be based on the First Amendment unless plaintiff has established a valid First Amendment retaliation claim).[5] Accordingly, the Court analyzes Plaintiffs' intimate association claim under the legal framework of the substantive due process right found in the Fourteenth Amendment.

2. **Fourteenth Amendment**

   a. **Substantive Due Process**

In addition to their allegation that Defendants violated their constitutional right to be free from governmental intrusion in the making of medical decisions on behalf of their children, Plaintiffs also allege that Defendants violated their substantive due process rights "both through their continued treatment . . . when [Aaliyah] was medically ready for discharge, and through a conspiracy with ACS to petition for a court-ordered restriction from Plaintiffs' infant."[6] Pls.'

---

[5] The Court does not read Plaintiffs' Complaint as alleging retaliation for activities protected by the First Amendment, such as speech, petition, or association.

[6] Although Plaintiffs' papers can be read as bringing a substantive due process claim on behalf of both themselves and Aaliyah, where a "particular Amendment provides an explicit textual source of constitutional protection against

11/5/12 Mem. L. Opp. 6. Defendants, on the other hand, argue that Plaintiffs' own conduct, rather than the actions of the Defendants, caused a restriction to be placed on their parental rights. Defs.' Mem. L. 20.

The right to substantive due process "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Kia P.*, 235 F.3d at 758 (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997)). To establish a violation of substantive due process, a plaintiff must demonstrate that the state action was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Southerland*, 680 F.3d at 151 (quotations and citation omitted). Although the Second Circuit has described the interest of a parent in the custody of her child as "a fundamental, constitutionally protected liberty interest," *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996), it has held that "[n]o matter how important the right to family integrity, it does not automatically override the sometimes competing 'compelling governmental interest in the protection of minor children, particularly in circumstances where the protection is considered necessary as against the parents themselves.'" *Kia P.*, 235 F.3d at 758 (quoting *Wilkinson*, 182 F.3d at 104). Accordingly, in recognition of the need for "'unusual deference in the abuse investigation context,'" a child abuse investigation will "'pass[] constitutional muster provided simply that case workers have a 'reasonable basis' for their findings of abuse.'" *Id.* at 758-59 (quoting *Wilkinson*, 182 F.3d at 104) (internal citation omitted). "The 'reasonable basis' test 'permit[s] investigators

---

a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing [those] claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quotations and citation omitted). Accordingly, because Defendants' detention of Aaliyah is cognizable as a seizure under the Fourth Amendment, and because Plaintiffs have alleged a Fourth Amendment claim on Aaliyah's behalf, that claim must be analyzed under the standard appropriate to the Fourth Amendment, and only Plaintiffs may properly assert a substantive due process claim. *See Kia P.*, 235 F.3d at 757-58; *Tenenbaum v. Williams*, 193 F.3d 581, 600 (2d Cir. 1999); *see also Southerland v. City of NY*, 680 F.3d 127, 142-43 (2d Cir. 2012), *amending and superseding* 667 F.3d 87 (2d Cir. 2012), *reh'g en banc denied* 681 F.3d 122 (2d Cir. 2012); *Estiverne v. Esernio-Jenssen*, 833 F. Supp. 2d 356, 371 n.11 (E.D.N.Y. 2011).

considerable discretion' in their handling of abuse claims, as well as a measure of judicial 'deference' in the review of investigators' conduct." *E.D. v. Tuffarelli*, 692 F. Supp. 2d 347, 360 (S.D.N.Y. 2010) (quoting *Wilkinson*, 182 F.3d at 104, 106), *aff'd,* 408 F. App'x 448 (2d Cir. 2011). "[A] mere failure to meet local or professional standards, without more, should not generally be elevated to the status of constitutional violation." *Id.* (quoting *Wilkinson*, 182 F.3d at 106).

Accepting Plaintiffs' allegations as true, Defendants did not become "state actors" until Aaliyah was medically cleared for discharge in or about October 2011. Accordingly, Plaintiffs' own allegations make clear that a judicial determination that Aaliyah's removal from her parents was proper was made prior to the time that Defendants became state actors. The cases to which Plaintiffs cite are therefore inapposite, as they address the issue of the constitutional implications of a state actor's detention of a child *pending a judicial determination of whether removal is proper*. *See Nicholson v. Scoppetta*, 344 F.3d 154, 172 (2d Cir. 2003) (holding that the *ex parte* removal process, which is designed to safeguard the child until a court hearing is practicable, and which requires that judicial confirmation be obtained "forthwith," does not infringe on plaintiffs' substantive due process rights); *Kia P.*, 235 F.3d at 759 (holding that hospital's holding of infant for a short period of time pending the outcome of CWA's determination of whether to authorize child's release was constitutional); *see also Orlik v. Dutchess Cnty.*, 603 F. Supp. 2d 632, 646 (S.D.N.Y. 2009) (holding that the temporary removal of a child *pending a judicial determination of whether removal was proper* does not rise to the level of a violation of substantive due process).

Here, on the other hand, Aaliyah was removed to the custody of ACS pursuant to a judicial determination of the Family Court *prior to* her admission to Blythedale, and months

before Defendants became "state actors" in or about October 2011.[7]  The Second Circuit has held that in light of the "presumption of regularity" attributed to state judicial proceedings, even where a child has been wrongfully removed on an emergency basis, "once . . . 'court confirmation of the basis for removal' is obtained, . . . any liability for the continuation of the allegedly wrongful separation of parent and child can no longer be attributed to the officer who removed the child."  *Southerland*, 680 F.3d at 153.  Here, it was ACS, and not Defendants, who initiated removal proceedings against Plaintiffs in Family Court.  Even assuming *arguendo* that Defendants played a role in the removal of Aaliyah from her parents, because "court confirmation of the basis for removal" was obtained, Defendants cannot be held liable for Aaliyah's removal.  *See Schweitzer v. Crofton*, No. 08 Civ. 0135 (MKB), 2013 WL 1208999, at *13 (E.D.N.Y. Mar. 25, 2013) (holding that any removal that occurred following a post-removal judicial hearing was not attributable to defendant, who removed the infant prior to the family court hearing).  Accordingly, Plaintiffs have failed to state a substantive due process claim as a result of Defendants' continued detention of Aaliyah.

With respect to Plaintiffs' argument that Defendants violated their substantive due process rights "through a conspiracy with ACS to petition for a court-ordered restriction from Plaintiffs' infant," the Court finds that Plaintiffs' Complaint does not contain sufficient factual allegations to support a claim of conspiracy.  Although Plaintiffs claim that Defendants "fabricated information" in order to get their visits with their daughter restricted and reported to ACS that Plaintiffs planned to "kidnap" Aaliyah, Plaintiffs fail to allege any specific facts giving

---

[7] In support of their argument, Plaintiffs submit a Consent Order from the Juvenile and Domestic Relations District Court of Chesterfield County, Virginia, granting custody of Aaliyah to Plaintiffs.  *See* Pls.' Feb. 5, 2013 letter.  The Order, dated December 10, 2012, does not compel a different outcome.  Plaintiffs' own allegations make clear that Aaliyah was in the custody of ACS *at the time* of her admission to Blythedale, and that she remained in the custody of ACS throughout all relevant times.  Moreover, Plaintiffs concede that Aaliyah received a second medical opinion on November 8, 2012, notwithstanding their assertion that the basis of their action is the violation of their and Aaliyah's right to obtain a second opinion regarding her injuries.

rise to the inference that Plaintiffs "conspired" with ACS.

Moreover, to the extent that Plaintiffs allege that Defendants acted in bad faith or with an improper motive, the Court finds that Plaintiffs still fail to allege a constitutional violation. Even accepting Plaintiffs' allegations as true for purposes of this motion, Plaintiffs have failed to overcome the "presumption of regularity attributed to state judicial proceedings" by showing that Aaliyah's removal from Plaintiffs was summarily approved by the Family Court "on the basis of false or greatly flawed . . . representations, or that the judicial proceeding was otherwise substantially tainted." *Graham v. City of New York*, 869 F. Supp. 2d 337, 353 (E.D.N.Y. 2012) (citing *Southerland*, 680 F.3d at 154-55 ("'Although the [plaintiff's children] continued to be separated from [him] even after the post-removal confirmation proceeding, in light of the presumption of regularity that we attribute to state judicial proceedings, . . . and in light of [his] failure to proffer any evidence tending to rebut that presumption, we cannot conclude that the continued separation of [plaintiff] from his children following the judicial confirmation proceeding is fairly attributable to' the caseworker."). Plaintiffs do not allege any substantial irregularities in the family court proceedings that resulted in the issuance of the Removal Order—which occurred *prior to* Blythedale's involvement in the matter[8]—and, accordingly, the independent judicial determination of the Family Court absolves Defendants of any liability.[9]

---

[8] Although Plaintiffs argue that the Removal Order "relied on information from a hospital that was never challenged" (i.e., a second opinion was never obtained from another hospital), Pls.' 11/5/12 Mem. L. Opp. 7, that alone is insufficient to overcome the strong presumption of regularity. Moreover, the Court notes that the Order removing Aaliyah from Plaintiffs' custody was issued *prior to* Aaliyah's admission to Blythedale and was therefore not based upon *any* information or allegations made by Blythedale.

[9] Plaintiffs submitted recordings of telephone conversations between themselves and several of the individual Defendants as an exhibit to their May 22, 2012 letter to the Court. Plaintiffs argue that in one of those recorded conversations, Defendant Mitchell indicates that Plaintiffs did not threaten to remove Aaliyah from the hospital which, according to Plaintiffs, was the basis for the court-ordered restriction on Plaintiffs' visitation. Even accepting Plaintiffs' characterization of the telephone conversation as true, the Court finds that this sole conversation does not compel a different outcome. First, the Court notes that the affidavit to the Family Court regarding Plaintiffs' visitation rights was submitted by Defendant *Murray*, and not Defendant Mitchell.

Moreover, to the extent that Plaintiffs argue that Defendants fabricated information in the September 28, 2011 affidavit of Defendant Murray requesting that the Family Court suspend Plaintiffs' visitation rights and preclude them from taking Aaliyah for a second opinion, the Court notes that the Family Court, *on consent of all parties*, including Plaintiffs, who were parties to the Family Court proceeding, granted Plaintiff Licorish-Davis supervised visitation rights on March 22, 2012.  See Murray Aff. Ex. 4.  Indeed, Plaintiffs allege in the Complaint that they have been visiting Aaliyah in the hospital since she was first admitted.[10]  Compl. at 6.  Moreover, Plaintiffs state in their submissions to the Court that Aaliyah ultimately received a second medical opinion in November 2012.  Pls.' Feb. 5, 2013 letter.  Accordingly, Plaintiffs have failed to state a claim that their substantive due process rights were violated.

    b.  **Procedural Due Process**

In cases where the government gains custody of a child by refusing to release him or her after the parent has voluntarily granted temporary custody to the government or a third party, as is the case here, the Second Circuit has held that the State has the duty to initiate a "prompt" post-deprivation hearing after the child has been removed from the custody of his or her parents. *See Kia P.*, 235 F.3d at 760 (citing *Gottlieb*, 84 F.3d at 520).  In other words, "in those extraordinary situations, where deprivation of a protected interest is permitted without prior process, the constitutional requirements of notice and opportunity to be heard are not eliminated

---

Accordingly, that Defendant Mitchell may not have personally heard Plaintiffs threaten to remove their daughter from the hospital does not suggest that Defendant Murray's affidavit is inaccurate or untruthful.  Moreover, other than their consclusory assertions, Plaintiffs do not include any factual allegations supporting their argument that the Family Court order restricting their visitation rights was based solely upon Defendants' purported concerns about Plaintiffs kidnapping Aaliyah.  To the contrary, the Murray affidavit details several other incidents involving Defendants, such as their continued violation of hospital rules and their "erratic and threatening behavior."  Finally, Plaintiffs repeatedly argue that the basis for this action is the denial of their right to obtain a second medical opinion for their daughter, which, according to Plaintiffs' own submissions, they obtained on November 8, 2012.

[10] Similarly, in their opposition papers, Plaintiffs state that throughout Aaliyah's removal, they have had access to her, albeit "limited" and "monitored."  Pls.' 11/5/12 Mem. L. Opp. 7.

but merely postponed." *Id.* (quotations and citation omitted). Here, a hearing on the issue of Aaliyah's custody and the propriety of her removal was held in June 2011, months *before* Aaliyah was transferred to Blythedale for treatment. As of October 2011, at which time Defendants became "state actors" for purposes of the present motion, Plaintiffs had therefore already been given "notice and [an] opportunity to be heard." Accordingly, Plaintiffs have failed to state a plausible due process claim against Defendants.[11]

### 3. Fourth Amendment

Plaintiffs allege that Defendants violated their Fourth Amendment rights when they detained Aaliyah and obtained a court order restricting them from their child. However, because "Fourth Amendment rights are personal rights which . . . may not be vicariously asserted," *Alderman v. United States*, 394 U.S. 165, 174 (1969), Plaintiffs do not have standing to bring a Fourth Amendment claim in their own behalf with respect to Defendants' treatment of Aaliyah. *See Estiverne*, 833 F. Supp. 2d at 375 n.12 (citing *Tenenbaum* and *Southerland* for the proposition that plaintiffs such as Davis and Licorish-Davis do not have standing to assert Fourth Amendment claims on their own behalf, but that they do have standing to bring such claims on their child's behalf). Accordingly, the Court reads the Complaint as raising a Fourth Amendment claim on behalf of Aaliyah.

The Fourth Amendment protects individuals from "unreasonable searches and seizures,"

---

[11] Plaintiffs appear only to pursue substantive and procedural due process claims under the Fourteenth Amendment. To the extent that Plaintiffs raise an equal protection claim, however, the Court finds that any such claim fails. Although Plaintiffs argue in their opposition papers that Defendants would not have reported their behavior to the Family Court if they were "not of color" and that "minorities are disproportionately associated with abuse neglect cases," Pls.' 11/5/12 Mem. L. Opp. 3, such bare and conclusory allegations are insufficient to state an equal protection claim. Other than Plaintiffs' bald allegations regarding Defendants' purported motivations, they have failed to allege any facts from which the inference can be drawn that Defendants deliberately treated Plaintiffs or Aaliyah differently than any other similarly-situated patient because of their race. Rather, the Complaint and supplemental submissions suggest that Defendants were motivated, not by Plaintiffs' race, but rather by their concern for Plaintiffs' daughter's concededly dire medical needs. Accordingly, to the extent Plaintiffs raise an equal protection claim, such claim is dismissed.

but provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing . . . the persons or things to be seized." The Second Circuit has held that in the context of a seizure of a child by a state actor during an abuse investigation, "a court order is the equivalent of a warrant." *Tenenbaum*, 193 F.3d at 602. As previously discussed, the Family Court issued an order on June 13, 2011, nearly two months before Aaliyah was transferred to Blythedale, and approximately four months before Defendants allegedly became "state actors" by continuing to hold Aaliyah after she was medically cleared for discharge. Accordingly, because Defendants acted under the equivalent of a warrant at all relevant times, and Plaintiffs do not allege that Aaliyah was ever ordered back into their custody by the Family Court, they have failed to state a Fourth Amendment claim on their daughter's behalf.[12]

### 4. Ninth Amendment

Plaintiffs conclusorily allege a § 1983 claim under the Ninth Amendment. Courts have routinely held that the Ninth Amendment does not independently secure any constitutional rights which may support a § 1983 cause of action. *Rini v. Zwirn*, 886 F. Supp. 270, 289-90 (E.D.N.Y. 1995) (citing *Gibson v. Matthews*, 926 F.2d 532, 537 (6th Cir. 1991) (Ninth Amendment claim has no applicability in § 1983 action); *Schowengerdt v. United States*, 944 F.2d 483, 490 (9th Cir. 1991) (Section 1983 Ninth Amendment claim meritless as not independently securing any constitutional rights), *cert denied*, 503 U.S. 951 (1992)); *see also Barnett v. Carberry*, 420 F. App'x 67, 69 (2d Cir. 2011) (holding that the Ninth Amendment does not provide "an

---

[12] With respect to Plaintiffs' allegations that Defendants violated Aaliyah's Fourth Amendment rights by obtaining a court order restricting Plaintiffs from her, the Court finds that such alleged activity on the part of Defendants is not covered by the Fourth Amendment, which protects against unreasonable searches and seizures. Defendants' submission of an affidavit in support of a petition to restrict Plaintiffs' visitation rights with their daughter is neither a "search" nor a "seizure" triggering Fourth Amendment protection.

independent source of individual rights; rather, it provides a rule of construction that we apply in certain cases") (citation omitted), *cert. denied*, 132 S. Ct. 248 (2011); *Bussey v. Phillips*, 419 F. Supp. 2d 569, 586 (S.D.N.Y. 2006) ("[T]he Ninth Amendment refers only to unenumerated rights, while claims under § 1983 must be premised on specific constitutional guarantees."). Accordingly, Plaintiffs' Ninth Amendment claim must also be dismissed.

### IV. Plaintiffs' Claims Pursuant to 18 U.S.C. §§ 241 and 242

Plaintiffs' claims under 18 U.S.C. §§ 241 and 242 must be dismissed, as they are criminal statues, and "[a] private citizen does not have a constitutional right to . . . compel the initiation of criminal proceedings." *Russ v. Chavers*, No. 10 Civ. 1370 (SLT) (JO), 2012 WL 170007, at *5 (E.D.N.Y. Jan. 19, 2012) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another.")); *see also Paulin v. Figlia*, No. 11 Civ. 6934 (VB), 2013 WL 120167, at *7 (S.D.N.Y. Jan. 10, 2013) ("[T]here is no private right of action under either 18 U.S.C. § 241 or 18 U.S.C. § 242.") (citing *Dugar v. Coughlin*, 613 F. Supp. 849, 852 n.1 (S.D.N.Y. 1985)).[13]

---

[13] In their opposition papers, Plaintiffs raise for the first time state law claims for malicious prosecution, medical malpractice, gross negligence and false imprisonment. Pls.' 11/5/12 Mem. L. Opp. 10. Where, as here, all federal law claims are eliminated before trial, the "traditional 'values of judicial economy, convenience, fairness, and comity'" weigh in favor of declining to exercise supplemental jurisdiction over any remaining state law claims. *Kolari v. NY-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). Having dismissed all of Plaintiffs' federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims. 28 U.S.C. § 1367(c)(3).

## V. Conclusion

For the reasons set forth above, Defendants' motion to dismiss is GRANTED. The Clerk of the Court is respectfully directed to terminate the motion and close this case.[14] Doc. 31.

It is SO ORDERED.

Dated:   May 20, 2013
         White Plains, New York

Edgardo Ramos, U.S.D.J.

---

[14] The Court remains cognizant that *pro se* litigants should be given leave to amend a complaint if "a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citing *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). However, in light of the fact that Aaliyah was placed into the custody of ACS by the Family Court *prior to* her transfer to Blythedale, and because the Court finds that Plaintiffs have failed to overcome the "presumption of regularity attributed to state judicial proceedings," the Court finds that there is no "reason to believe that [Plaintiffs] may be able to articulate a viable set of allegations" to support their § 1983 claims and that their claims, "however pled, are fatally flawed." *Santos v. Gen. Elec. Co.*, No. 10 Civ. 6948 (JSR) (MHD), 2011 WL 5563544, at *12 (S.D.N.Y. Sept. 28, 2011) (Report & Recommendation), *adopted* 2011 WL 5563536 (S.D.N.Y. Nov. 15, 2011).